BROWN, Circuit Judge,
concurring:
I join the majority opinion in full as to the plaintiffs’ Bivens claims and to the extent it disposes of plaintiffs’ Religious Freedom Restoration Act (“RFRA”) claims under the doctrine of qualified immunity. I write separately because I disagree that the term “person” limits the scope of the RFRA.
I
The majority reinstates its initial holding that plaintiffs cannot bring a RFRA claim because they are not “person[s]” within the meaning of that statute. See Maj. Op. 532-33 (summarizing its analysis from Rasul v. Myers, 512 F.3d 644, 668 (D.C.Cir.2008) {Rasul I)). Yet, “[a] fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.” Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). RFRA does not define “person,” so we must look to the word’s ordinary meaning. There is little mystery that a “person” is “an individual human being ... as distinguished from an animal or a thing.” Webster’s New International Dictionary 1686 (1981). Unlike the majority, I believe Congress “[did not] specifically intend! ] to vest the term ‘persons’ with a definition ... at odds with its plain meaning.” Rasul v. Rumsfeld, 433 F.Supp.2d 58, 67 (D.D.C.2006).
The majority does not point to a single statute defining “person” so narrowly as to exclude nonresident aliens from its ambit, and nothing in RFRA’s history suggests Congress focused on the term’s scope here. RFRA originally provided that “[government shall not substantially burden a person’s exercise of religion” unless such a burden is “the least restrictive means of furthering [a] compelling governmental interest.” 42 U.S.C. § 2000bb-l (1994) (emphasis added). It defined “exercise of religion” as “the exercise of religion under the First Amendment to the Constitution.” Id. § 2000bb-2(4) (emphasis added). The reference to the “First Amendment” made it clear that persons who did not have First Amendment rights were not protected by RFRA. Given this clear textual basis, the term “person” did no work *325 as a limiting principle — “First Amendment” did the job.
In the Religious Land Use and Institutionalized Persons Act (“RLUIPA”) of 2000, Pub.L. No. 106-274, 114 Stat. 803, Congress amended RFRA’s definition of “exercise of religion” to cover “any exercise of religion, whether or not compelled by, or central to, a system of religious belief,” and removed the term “First Amendment.” See id. §§ 7(a), 8(7)(A), 114 Stat. 806, 807. This change was meant to “clarify[ ] issues that had generated litigation under RFRA” by providing that “[r]e-ligious exercise need not be compulsory or central to the claimant’s religious belief system.” H.R. Rep. NO. 106-219, at 30 (1999); see also Adkins v. Kaspar, 393 F.3d 559, 567-68 & n. 34 (5th Cir.2004) (citing pre-RLUIPA cases requiring “the religious exercise burdened to be ‘central’ to the religion”). Congress wanted to expand RFRA’s protections to a broader range of religious practices, see Navajo Nation v. U.S. Forest Serv., 479 F.3d 1024, 1033 (9th Cir.2007); there is no indication it wanted to broaden the universe of persons protected by RFRA. However, by removing the term “First Amendment” from RFRA, Congress inadvertently deleted the textual hook precluding persons who did not have First Amendment rights from asserting RFRA claims.
The panel majority attempts to cure the problem created by Congress’s careless amendment by constricting the meaning of the term “person.” This boils down to a claim that, by removing the term “First Amendment” from RFRA’s definition of “exercise of religion,” Congress sub silen-tio changed RFRA’s definition of “person.” But this transforms statutory interpretation into a game of whaek-a-mole: a deleted textual hook does not simply re-appear in another statutory term.
Finding no other support for its constricted definition of “person,” the majority turns to decisions interpreting constitutional provisions: Johnson v. Eisentrager, 339 U.S. 763, 70 S.Ct. 936, 94 L.Ed. 1255 (1950) (Fifth Amendment), and United States v. Verdugo-Urquidez, 494 U.S. 259, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990) (Fourth Amendment). Eisentrager rejected this circuit’s conclusion that the breadth of the term “person” in the Fifth Amendment expanded the coverage of the Due Process Clause beyond its traditional limits. Nevertheless, nowhere in its extensive discussion did the Court rely on the definition of “person.”[1] Its holding turned on the conventional understanding of the Fifth Amendment, the “full text” of that Amendment, and the foreign policy complexities of allowing aliens to assert constitutional rights. Id. at 782-83, 70 S.Ct. 936.[2] Moreover, Eisentrager interpreted the Due Process Clause; RFRA implements the Free Exercise Clause. The term “person” does not appear in the Free Exercise Clause, see U.S. Const, amend. I (“Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof .... ”), and thus *326 the definition of “person” cannot be the reason aliens held abroad do not have free exercise rights.
Verdugo is even less helpful to the majority. Unlike Eisentrager, Verdugo did rely on a definitional analysis, explaining that the Fourth Amendment did not apply to nonresident aliens outside of our borders, in part, because “the people” referred to in the Amendment identifies a “class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community.” 494 U.S. at 265, 110 S.Ct. 1056 (emphasis added). While “the people” are merely a “class of persons,” the relevant inquiry for RFRA purposes is “who are ‘persons’?” The answer is obvious — “persons” are individual human beings, of whom the American people are just one class.
II
While the majority’s approach is untenable, the plaintiffs still do not prevail. RFRA’s proscription that “[government shall not substantially burden a person’s exercise of religion” and RLUIPA’s new definition of “exercise of religion” as “any exercise of religion, whether or not compelled by, or central to, a system of religious belief,” leave no textual basis for prohibiting suits brought by non-resident aliens held at Guantanamo, or foreign nationals who work for American officials on NATO military bases, or, arguably, ji-hadists our soldiers encounter on foreign battlefields.[3] While “statutory language represents the clearest indication of Congressional intent,” we may go beyond the text in those “rare cases” where a party can show that “the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.” Nat’l Pub. Radio, Inc. v. FCC, 254 F.3d 226, 230 (D.C.Cir.2001).
The unusual drafting history of RFRA and RLUIPA make this one of those rare cases. RFRA originally only provided for suits for violation of First Amendment rights, which did not include intrusions on the free exercise of those in plaintiffs’ position. See Cuban Am. Bar Ass’n, Inc. v. Christopher, 43 F.3d 1412, 1428 (11th Cir. 1995). There is no doubt that RLUIPA’s drafters, in changing the definition of “exercise of religion,” wanted to broaden the scope of the kinds of practices protected by RFRA, not to increase the universe of individuals protected by RFRA. See H.R. Rep. NO. 106-219, at 30; Adkins, 393 F.3d at 567-68 & n. 34; Navajo Nation, 479 F.3d at 1033. Literal application of RFRA would force us to hold Congress’s careless drafting inadvertently expanded the scope of RFRA plaintiffs. Such a result is “demonstrably at odds with the intentions of [RLUIPA’s] drafters.” See Nat'l Pub. Radio, 254 F.3d at 230.
Ill
Accepting plaintiffs’ argument that RFRA imports the entire Free Exercise Clause edifice into the military detention context would revolutionize the treatment of captured combatants in a way Congress did not contemplate. In drafting RFRA, Congress was not focused on how to accommodate the important values of religious toleration in the military detention *327 setting. If Congress had focused specifically on this challenge, it would undoubtedly have struck a different balance: somewhere between making government officials’ wallets available to every detainee not afforded the full panoply of free exercise rights and declaring those in our custody are not “persons.” It would not have created a RFRA-like damage remedy, but it likely would have prohibited, subject to appropriate exceptions, unnecessarily degrading acts of religious humiliation. It would have sought to deter such acts not by compensating the victims, but by punishing the perpetrators or through other administrative measures. See, e.g., Ronald W. Reagan National Defense Authorization Act for Fiscal Year 2005, Pub.L. No. 108-375, §§ 1091 to 1092, 118 Stat. 1811, 2068-71 (2004) (to be codified at 10 U.S.C. § 801 note) (creating an administrative regime to prevent unlawful treatment of detainees); Detainee Treatment Act of 2005, Pub.L. 109-148, § 1003(a), 119 Stat. 2739 (to be codified at 42 U.S.C. § 2000dd) (“No individual in the custody or under the physical control of the United States Government, regardless of nationality or physical location, shall be subject to cruel, inhuman, or degrading treatment or punishment.”). Judicial interpretation without text is at best a stop-gap; at worst, a usurpation. In 2000, when Congress amended RFRA, jihad was not a prominent part of our vocabulary and prolonged military detentions of alleged enemy combatants were not part of our consciousness. They are now. Congress should revisit RFRA with these circumstances in mind.

. Similarly, none of the other Fifth Amendment cases cited in the majority's initial opinion, Rasul I, 512 F.3d at 668, rely on the definition of "person.” See Jifry v. FAA, 370 F.3d 1174, 1182-83 (D.C.Cir.2004) (not mentioning the term "person” in holding nonresident aliens with insufficient contacts do not have Fifth Amendment rights); People's Mojaliedin Org. of Iran v. U.S. Dep’t of State, 182 F.3d 17, 22 (D.C.Cir.1999) (same for foreign entities).

. In fact, the Eisentrager Court repeatedly used the term "person” in its common meaning. See id. at 768 n. 1, 70 S.Ct. 936 (citing cases brought on behalf of "persons,” referring to "German enemy aliens”); id. at 783, 70 S.Ct. 936 ("The Court of Appeals has cited no authority whatever for holding that the Fifth Amendment confers rights upon all persons. ...”).

. The term “government” provides no limiting basis since RFRA defines this term as including an “official (or other person acting under color of law) of the United States, or of a covered entity.” 42 U.S.C. § 2000bb-2(l). Defendants, the Secretary of Defense and high-ranking military officers, are unquestionably officials of the United States. Moreover, as the majority points out, since defendants are officials of the United States, it is irrelevant whether Guantanamo Bay Naval Base is a "covered entity.” Rasul I, 512 F.3d at 667 n. 19.